IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| **Joseph C. Sun**, | ) Civil Action No. 9:09-2050-RBH-BM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| **Bluffton Police Department, Jeffery A. Dickson, Olesya Matyushevsky, and Citizens Opposing Domestic Abuse,** | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983 and the Federal Racketeer Influenced and Corrupt Organization Act (RICO). Plaintiff asserts an excessive force claim and also asserts allegations relating to his state court divorce proceedings.

The Defendants Bluffton Police Department and Jeffery Dickson filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P. on February 5, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 8, 2010, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Thereafter, on February 19, 2010, the Defendants Citizens Opposing Domestic Abuse (CODA) and Olesya Matyushevsky filed a motion to dismiss, following which a second Roseboro order was entered on February 22, 2010.

1



After receiving extensions of time, Plaintiff filed responses to the motions to dismiss on May 18, 2010, following which a reply memorandum was filed by CODA and Matyushevsky on May 28, 2010. Plaintiff also filed a reply memorandum on July 15, 2010, and an affidavit on July 19, 2010. These motions are now before the Court for disposition.[1]

### Plaintiff's Allegations

Plaintiff alleges in his unverified amended complaint[2] that he is a Chinese American citizen who met his wife, LiLing, in China in 1999. Plaintiff alleges that after he returned to the United States, he petitioned for a visa for LiLing to come to America, and they were thereafter married. LiLing is also now an American citizen. Plaintiff alleges that, after LiLing became an American citizen, she filed for divorce, at which time she was also committing adultery with an individual named Mark Walsh.

Plaintiff alleges that the Defendant CODA, a non-profit organization chartered to help and provide shelter to victims of domestic abuse, through its staff attorney, the Defendant Matyushevsky, "conspired with and coached LiLing to fabricate accusation[s] of domestic violence . . ." so that they could cover up LiLing's adultery. Plaintiff alleges that as part of this scheme, Matyushevsky committed perjury and mail fraud. Specifically, Plaintiff allege that Matyushevsky prepared perjured affidavits and other bogus documents which were used at a Family Court hearing

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed motions to dismiss. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff has filed an *unverified* Complaint.

2



in a further conspiracy with Family Court Judge Peter Fuge, to wrongfully evict Plaintiff from his mother's house and take away Plaintiff's car, giving them to Plaintiff's wife. Plaintiff alleges that he was intimidated and threatened by Judge Fuge at the hearing, and that because he was "intimidated and fearful of Judge Fuge" he could not adequately present a case in his defense.

Plaintiff further alleges that LiLing called his mother in Canada and threatened her, telling her that unless there was a monetary settlement the Family Court would enter an order sending Plaintiff to jail. Plaintiff alleges, however, that Matyushevsky subsequently withdrew "the proposed settlement offer", and made false claims on property "paid for and titled in the name of Plaintiff's mother." Plaintiff alleges that his mother ultimately gave in to Matyushevsky and gave LiLing Thirty Thousand ($30,000.00) Dollars in cash from her retirement savings.

In his first cause of action, Plaintiff alleges a violation of the RICO statute by CODA and Matyushevsky. Plaintiff alleges that Matyushevsky, as an employee of CODA, and LiLing (who is not a defendant in this action) committed various acts of perjury and obtained false evidence for use against him in his family court proceedings. Plaintiff further alleges that Matyushevsky threatened his mother so that she unwillingly agreed to give Matyushevsky and LiLing Thirty Thousand ($30,000.00) Dollars in cash, and that Matyushevsky further coached LiLing to limit Plaintiff's visitation with his daughter unless Plaintiff got his mother to give them money and property. Plaintiff alleges that pursuant to 18 U.S.C. § 1964(a) he is entitled to an order prohibiting Matyushevsky and LiLing from engaging in their improper and unlawful activities, and that pursuant to 18 U.S.C. § 1964(c) he is entitled to monetary damages.

In his second cause of action, which is asserted under 42 U.S.C. § 1983, Plaintiff alleges that as part of their scheme of extortion in violation of RICO, Matyushevsky and LiLing



called the Bluffton Police Department and falsely claimed that he was in violation of an order issued by the Beaufort County Family Court. Plaintiff alleges that the Bluffton Police Department has a pattern of discriminating against Asian residents. Plaintiff further alleges that in 2008 the Bluffton Police Department refused to prosecute a hit and run driver who had intentionally damaged Plaintiff's car and tried to kill the Plaintiff, and that because he filed a formal complaint with the police chief the Bluffton Police Department "took the opportunity to retaliate".

Plaintiff alleges that in response to the claim that he was in violation of a Family Court Order, officers of the Bluffton Police Department, including the Defendant Officer Dickson, came to his mother's home where Plaintiff was having visitation with his minor daughter and knocked on the door and demanded entry without giving any reason. Plaintiff concedes that he "refused and ignored" Dickson, at which time Dickson then instructed other officers to try to break into the house. Plaintiff alleges that he then opened the door and asked what was going on, at which time Dickson pushed him against the wall, knocking him over, and twisted his arm behind his back while using profanity. Plaintiff alleges that Dickson "cuffed" his arm tight on his back and put Plaintiff in his patrol car "without any air condition". Plaintiff alleges that he was "in great pain", but that although he asked Dickson to "loosen the cuff or to cuff him in the front", Dickson refused. Plaintiff alleges he was without air conditioning "in the 95 degree temperature" for over an hour.

Plaintiff further alleges that Dickson warned him not to complain about the violent treatment or he would "get more worse treatment", and that after "torturing Plaintiff for over an hour", Dickson moved Plaintiff to another patrol car and left. Plaintiff alleges that he was then released by the other officer, but that because of Dickson's actions, he suffered "severe pain on his shoulders and arms [and] suffocating . . . heat and dehydration for over an hour in Dickson's patrol

4



car," and that he had to obtain medical treatment for his injuries. Plaintiff also alleges that the doors and locks on the house were damaged, which he was "obligated" to repair.[3] Plaintiff seeks monetary damages. See generally, Amended Complaint.

### **Discussion**

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Additionally, the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); and as the Plaintiff is proceeding pro se, his pleadings are considered pursuant to this liberal standard. However, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990).

### **I.**

### **(Defendants Matyushevsky and CODA)**

These Defendants assert that they are entitled to dismissal of Plaintiff's claims on two grounds. First, they assert that Plaintiff's complaint fails to state a plausible claim for relief under RICO, thereby entitling them to dismissal as Defendants in Plaintiff's first cause of action. Second,

---

[3]Additional allegations contained in ¶¶ 20-22 of the Amended Complaint have not been considered. See Court Docket Nos. 25, 31-33, 36.

5



these Defendants assert that they are not subject to suit under § 1983, and therefore to the extent they have been named as Defendants in Plaintiff's second cause of action, they are entitled to dismissal as party Defendants under that claim. After careful review and consideration of the allegations of Plaintiff's amended complaint, the undersigned is constrained to agree that these Defendants are entitled to dismissal as party Defendants in this case.

**RICO Claim**. Rule 8, Fed.R.Civ.P., requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." In order to maintain a RICO cause of action, Plaintiff is required to show an injury to business or property, as RICO creates a civil cause of action only for persons injured in their business or property by reason of a violation of statute. See 18 U.S.C. § § 1961-1968. As correctly noted by the Defendants, "[t]he Supreme Court has interpreted this language to require that the violation of RICO be the proximate cause of the injury [to business or property]. . . . 'It is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege . . . an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged.'" Cardwell v. Sears Roebuck and Co., 821 F.Supp. 406, 408 (D.S.C. 1993)(quoting Brandenburg v. Seidel, 859 F.2d 1179, 1187 (4th Cir. 1988)(citations omitted)).

The conduct of Matyushevsky and LiLing which is alleged to constitute a RICO violation in Plaintiff's first cause of action are "numerous predicate acts of perjury, subornation of perjury which include, but not limited to, preparing perjured affidavits . . . [and] calling and threatening Plaintiff [ ] and his mother in Canada to give them money and property, or else there would be an order of contempt . . ., [and coaching] LiLing to limit Plaintiff's visitation with his beloved daughter to a minimum unless and until Plaintiff [ ] asked his mother to give Matyushevsky and client some money and property." Plaintiff's Complaint, pp. 6-7. In other words, Plaintiff



6

alleges that Matyushevsky and Plaintiff's wife submitted perjured testimony and evidence in his family court proceedings and that these two individuals also improperly pressured his mother to reach a financial settlement. True or not, these allegations do not set forth a pattern of racketeering activity under the RICO statute, as Plaintiff has alleged no injury to his business or property. Plaintiff affirmatively alleges in his Complaint that he has no money or property. The car and house Plaintiff discusses in his Complaint, which he contends were awarded to LiLing (or at least over which she now apparently has control), are alleged to be owned by Plaintiff's mother, not the Plaintiff. See Amended Complaint, ¶ ¶ 7, 11-12; see also Plaintiff's Affidavit, #11.

Further, there is no "enterprise" which is engaged in interstate or foreign commerce over which Matyushevsky and LiLing are attempting to acquire control. See 18 U.S.C. § 1962(b)(c); see also Sadighi v. Daghighfekr, 36 F.Supp.2d 279, 291 (D.S.C. 1999)[Holding that to state a claim under § 1962(b), a Plaintiff must allege that a Defendant acquired or maintained an interest in or control of an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activity]. Plaintiff appears to make the allegation in his Complaint that LiLing and Matyushevsky are attempting to acquire or maintain an interest in or control CODA. See Amended Complaint, ¶ ¶ 12-13. However, Matyushevsky is a staff attorney at CODA, and Plaintiff's Complaint contains no allegations showing that she had taken control of CODA through her assistance of LiLing in the divorce proceedings. Cf. Biofeed Trac, Inc. v. Kolinor Optical Enterprises & Consultants, SRL, 832 F.Supp. 585, 590 (E.D.N.Y 1993)[Liability under § 1962(c) may not be imposed on one who merely participates in an enterprise's affairs]; South Carolina Electric and Gas Co. v. Westinghouse Electric Corp., 826 F.Supp. 1549, 1560 (D.S.C. 1993). CODA itself also has no liability under § 1962(b) or (c). Umstead v. Durham Hosiery Mill, Inc., 592 F.Supp. 1269, 1271 (M.D.N.C. 1984)["Because the



7

statute condemns only activity of the person, not of the enterprise, it follows that the enterprise must be a being or entity different from the person whose behavior the statute was designed to punish"]; cf. Busby v. Crown Supply, Inc., 896 F.2d 833, 840-841 (4th Cir. 1991)[Holding that while the alleged perpetrator may also be the alleged enterprise under § 1962(a), the enterprise and the perpetrator still must be distinct under the remaining provisions of § 1962].

Hence, based on a review of the allegations in Plaintiff's first cause of action in conjunction with the applicable caselaw setting forth the requirements for stating a valid RICO claim, it is clear that Plaintiff has failed to satisfy the requirements of Rule 8, necessitating dismissal of Plaintiff's RICO claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)[While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, factual allegations must be enough to raise a right to relief above the speculative level]; Neitzke v. Williams, 490 U.S. 319, 322-330 (1989) [under 28 U.S.C. § 1915 a claim is frivolous and may be dismissed where it is presented in a patently insubstantial complaint, petition, or pleading]; see generally Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.]; see also Johnson v. Voinovich, No. 02-3232, 2002 WL 31085152 at * * 2 (6th Cir. Sept. 17, 2002)[Conclusory arguments insufficient to demonstrate a pattern of racketeering activity under RICO]; Palmer v. Ohio State University, No. 02-3442, 2002 WL 31095680 (6th Cir. Sept. 18, 2002)[Mere conclusory allegations not sufficient to satisfy basic requirements of RICO statute].

**Section 1983 claim**. With respect to Plaintiff's § 1983 claim against these Defendants, Plaintiff merely alleges that as part of their scheme of extortion in violation of RICO,



these two Defendants called the Bluffton Police Department and falsely claimed that Plaintiff was in violation of an Order of the Family Court. Amended Complaint, ¶ 15. Even if true, this allegation does not set forth a valid claim under § 1983 against either of these two Defendants.

In order to state a cause of action under § 1983, Plaintiff must allege both that he was deprived of a federal right, and that the named Defendants did so "under color of state law". Gomez v Toledo, 446 U.S. 635, 640 (1980); see also Dixon v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of setting forth facts sufficient to state all the elements of a claim]. Both CODA and Matyushevsky, as an employee of CODA, are private, not public, entities or persons. Amended Complaint, ¶ ¶ 3 and 4. See Jackson v. State of South Carolina, 498 F.Supp. 186, 192-193 (D.S.C. 1979)[Retained attorney does not act under the color law within in the meaning of §1983]. Therefore, their actions are not "under color of state law," and purely private conduct, no matter how wrongful, injurious, or discriminatory is not actionable under § 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982); Burton v. Willington Parking Authority, 365 U.S. 715, 721 (1961).

In order for a private individual to act under color of state law, the private individual must be a willful participant in joint action with the State or with an agent of the State. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Debauche v. Trani, 191 F.3d 499, 506-507 (4th Cir. 1999), cert denied 529 U.S. 1033 (2000). Here, neither of these two Defendants participated in any joint activity with the Bluffton Police Department; rather, they simply reported what they alleged was a violation of a state court order (whether they did so improperly or not), with all of the remaining conduct of which Plaintiff complains being taking by police officers. This is not state action. See Johns v. Home Depot U.S.A., Inc., 221 F.R.D. 400, 405 (S.D.N.Y 2004)["[Defendant's] call to the police does not amount to 'willful collaboration' giving rise to § 1983 liability . . . . Assuming arguendo that



[Defendant's] calls lead to Plaintiff's detainment by . . . police officers, this conduct would similarly fall short of § 1983 state action requirement . . . . Moreover, even assuming [the Defendant] had supplied the police with false information, Plaintiff would still fail to state a claim"]; Kahermanes v. Marchese, 361 F.Supp. 168, 171 (E.D.Pa. 1973)["The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts]; Lugar, 457 U.S. at 939, n. 21 [Private party's mere invocation of state legal procedures does not constitute joint participation or conspiracy with state officials]; Chiles v. Crooks, 708 F.Supp. 127, 130-131 (D.S.C. 1989)[Police reliance in making an arrest on information given by a private party does not make the person a state actor].

Therefore, these two Defendants are also entitled to dismissal as party Defendants under Count 2 of Plaintiff's Complaint, asserting a claim under § 1983.

## II.

### (Defendants Bluffton Police Department and Jeffery Dickson)

In Count 2 of his Amended Complaint, Plaintiff asserts claims against the Defendants Bluffton Police Department and Jeffery Dickson under § 1983.[4] Specifically, Plaintiff alleges that the police department has a "pattern of discrimination against Asian residents", citing to a 2008 incident where the police department refused to prosecute a hit and run driver whom Plaintiff alleges intentionally damaged his car and tried to kill him. Plaintiff further alleges that the actions of the police department in response to Matyushevsky and LiLing's complaint provided the police with an "opportunity to retaliate." Plaintiff alleges that when he allowed Dickson into the house, he was

---

[4]Neither of these Defendants is named in Count I.



pushed against the wall, knocked over, and that his arm was twisted behind him while Dickson was using profanity. Plaintiff then alleges that his arms were handcuffed behind him so tightly that it caused "great pain", and that he was then left in an un-airconditioned patrol car for over an hour in the ninety-five degree heat.

As a government employee, the Defendant Dickson is subject to suit under § 1983 for damages in his individual capacity. Gomez, 446 U.S. at 640; Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). The Bluffton Police Department may also be subject to suit under § 1983. Dotson v. Chester, 937 F.2d 920, 923-924 (4th Cir. 1991)[Local governmental entities may be sued under § 1983]. These Defendants argue, however, that even though subject to suit under § 1983, they are entitled to dismissal of the claims asserted against them on the basis of qualified immunity.[5]

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the Court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

Qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. "In determining whether the specific right allegedly violated was 'clearly

---

[5]"Government officials are entitled to assert claims of qualified immunity prior to the onset of discovery in the form of a Fed.R.Civ.P. 12(b)(6) motion to dismiss." Vaughn v. U. S. Small Business Adm., 65 F.3d 1322, 1325, n. 1 (6th Cir. 1995).



established,' the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) . . . As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).

The question thus becomes whether, considering the factual allegations of Plaintiff's Complaint to be true, Plaintiff has set forth allegations sufficient to state a plausible claim that the Defendants conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. Iqbal, 129 S.Ct. at 1949; Harlow, 457 U.S. at 818; see also Rule 8, Fed.R.Civ.P. [Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."].

At the time of the incident in question it was certainly clearly established that police officers cannot use excessive force when effecting an arrest, which a reasonable police officer should have known. See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; see also Orem v. Rephann, 523 F.3d 442, 448 (4th Cir. 2008)["In 2005, it was clearly established that an arrestee or pretrial detainee is protected from the excessive use of force."]; United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Martinez-Rodriguez v. United States, No. 09-35386,



2010 WL 1473991 at * 1 (9th Cir. Apr. 14, 2010)[Finding that right against excessive force at time of arrest was clearly established]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v. Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).[6] Under the Fourth Amendment,[7] claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard. Smith v. Kendall, No. 09-6452, 2010 WL 764051 (4th Cir. Mar. 8, 2010). What is objectively reasonable depends on what conditions exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham v. Connor, 490 U.S. at 396; see Greenidge v. Ruffin, 927 F.2d 789 (4th Cir. 1991).

        While Plaintiff's allegations, standing alone and without further evidence to support, fail to establish entitlement of the Plaintiff to relief on his excessive force claim; cf. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; Plaintiff does nevertheless allege that he was shoved against a wall and knocked down, placed in handcuffs that the officer refused to loosen despite Plaintiff's complaints that they were too tight and causing him injury, that he was then left in an unair-conditioned patrol car for over an hour in ninety-five degree

---

[6]Since the time of the events set forth in Plaintiff's Complaint, the criteria for evaluating an excessive force claim have been somewhat modified. See Wilkins v. Gaddy, 130 S.Ct. 1175 (2010).

[7]"The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997)(citing Graham v. Conner, 490 U.S. 386, 388 (1989)). Thereafter, the Fourteenth Amendment due process clause protects a pre-trial detainee from the use of excessive force that amounts to punishment. Graham, 490 U.S. at 395, n. 10. In the case at bar, the Fourth Amendment applies to Plaintiff's excessive force claim since the events he alleges transpired incident to his arrest.



heat, and was warned that if he complained he would "get more worse treatment." Accepting these factual allegations as true, and giving Plaintiff's Complaint the liberal construction to which he is entitled, the undersigned cannot find that Plaintiff has failed to set forth sufficient factual allegations to state a plausible claim for excessive use of force "on its face". Iqbal, 129 S.Ct. at 1949; Cruz v. Beto, supra [Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case]. Therefore, the Defendant Dickson is not entitled to dismissal as a party Defendant at this early state of the proceedings.

However, while the Defendant Dickson is not entitled to dismissal, since he is the one who actually engaged in the conduct alleged, the Bluffton Police Department itself may be liable under § 1983 only if "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690-691 (1978). There is no governmental liability under § 1983 merely because it employs a tortfeasor. Therefore, a town or town police department may only be liable for damages when the execution of a policy or custom results in the alleged injury. Id. at 694; Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). Plaintiff has failed to set forth factual allegations sufficient to avoid dismissal of the police department under this standard.

Plaintiff makes no allegations of any departmental policy which Dickson would have been following to engage in an act of excessive use of force, nor has he alleged any custom of the police department regarding such conduct. The only claim he makes with respect to the police department itself is that it "had a pattern of discrimination against Asian residents in the past", but even then his only supporting allegation is that the police department refused to prosecute a hit and



14

run driver whom Plaintiff alleges damaged his car and tried to kill him about a year before the excessive force incident set out in the Complaint. Such a general and conclusory allegation is not a sufficient factual allegation of a policy or custom of the department relating to Dickson's alleged conduct to allow Plaintiff's claim against the department itself to continue. Bell Atlantic Corp., 550 U.S. at 555 [While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, factual allegations must be enough to raise a right to relief above the speculative level]; Neitzke, 490 U.S. at 330 [under 28 U.S.C. § 1915 a claim is frivolous and may be dismissed where it is presented in a patently insubstantial complaint, petition, or pleading]; see generally Leeds, 85 F.3d at 53 ["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.]. Therefore, the Bluffton Police Department is entitled to dismissal as a party Defendant.

## Conclusion

Based on the foregoing, it is recommended that the Defendants Matyushevsky and CODA's motion to dismiss be **granted,** and that these Defendants be **dismissed** as party Defendants in this case. Further, as these two Defendants are the only Defendants named in Plaintiff's First Cause of Action (RICO claim), Plaintiff's first cause of action should be **dismissed**, in toto.

With respect to Plaintiff's remaining § 1983 excessive force claim (Count 2 of the Complaint), it is recommended that the Bluffton Police Department be **dismissed** as a party Defendant in this case, while the motion to dismiss with respect to the Defendant Dickson should be **denied** for the reasons stated. If the Court adopts these recommendations, the only remaining claim will be Plaintiff's § 1983 excessive force claim against the Defendant Dickson.

15



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 21, 2010
Charleston, South Carolina

16



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

