IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| **Joseph C. Sun**, | ) | Civil Action No. 9:09-2050-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Jeffery A. Dickson**, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

        This action has been filed by the Plaintiff, <u>pro</u> <u>se</u>, pursuant to 42 U.S.C. § 1983.

Plaintiff asserts an excessive force claim against the Defendant, an officer with the Bluffton Police

Department.[1]

        The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on

October 15, 2010.  As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was issued by the Court

on October 26, 2010, advising Plaintiff of the importance of a motion for summary judgment and of

the need for him to file an adequate response.  Plaintiff was specifically advised that if he failed to

respond adequately, the Defendant's motion may be granted, thereby ending his case.  Plaintiff

thereafter filed a response in opposition to the motion for summary judgment on December 6, 2010,

following which the Defendant filed a reply memorandum on December 16, 2010.

---

        [1]Plaintiff's Complaint originally included additional claims against additional Defendants.
These other claims and Defendants were dismissed from Plaintiff's case by Order filed September
21, 2010.  Court Docket No. 114.  <u>See</u> <u>also</u> Court Docket No. 89.



The Defendant's motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his unverified amended complaint[3] that he is a Chinese American citizen who met his wife, LiLing, in China in 1999. Plaintiff alleges that after he returned to the United States, he petitioned for a visa for LiLing to come to America, and they were thereafter married. LiLing is also now an American citizen. Plaintiff alleges that, after LiLing became an American citizen, she filed for divorce, at which time she was also committing adultery with an individual named Mark Walsh. Plaintiff alleges that his wife and others fabricated accusations of domestic violence against him, and that perjured affidavits and other bogus documents were used at a Family Court hearing in order to convince the Family Court Judge to wrongfully evict Plaintiff from his mother's house and take away Plaintiff's car, giving them to Plaintiff's wife. Plaintiff further alleges that LiLing called his mother in Canada and threatened her, telling her that unless there was a monetary settlement the Family Court would enter an order sending Plaintiff to jail.

With respect to the specific claims being asserted against Dickson, Plaintiff alleges that LiLing, together with an employee of a domestic abuse organization (CODA), called the Bluffton Police Department and falsely claimed that he was in violation of an Order issued by the Family

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff has filed an *unverified* Complaint. Therefore, the undersigned has not considered the factual allegations in the Amended Complaint as evidence for purposes of this Report and Recommendation.



Court. Plaintiff alleges that in response to the claim that he was in violation of a Family Court order, officers of the Bluffton Police Department, including the Defendant Officer Dickson, came to his mother's home where Plaintiff was having visitation with his minor daughter and knocked on the door and demanded entry without giving any reason. Plaintiff concedes that he "refused and ignored" Dickson, at which time Dickson then instructed other officers to try to break into the house. Plaintiff alleges that he then opened the door and asked what was going on, at which time Dickson pushed him against the wall, knocking him over, and twisted his arm behind his back while using profanity. Plaintiff alleges that Dickson "cuffed" his arms tight on his back and put Plaintiff in his patrol car "without any air condition". Plaintiff alleges that he was "in great pain", but that although he asked Dickson to "loosen the cuff or to cuff him in the front", Dickson refused. Plaintiff alleges he was without air conditioning "in the 95 degree temperature" for over an hour.

Plaintiff further alleges that Dickson warned him not to complain about the violent treatment or he would "get more worse treatment", and that after "torturing Plaintiff for over an hour", Dickson moved Plaintiff to another patrol car and left. Plaintiff alleges that he was then released by the other officer, but that because of Dickson's actions, he suffered "severe pain on his shoulders and arms [and] suffocating . . . heat and dehydration for over an hour in Dickson's patrol car," and that he had to obtain medical treatment for his injuries. Plaintiff seeks monetary damages. See generally, Amended Complaint.

In support of summary judgment in the case, the Defendant Dickson has submitted an affidavit wherein he attests that he is a police officer for the Town of Bluffton, South Carolina. Dickson attests that on July 27, 2009, he responded to a child custody dispute call where Plaintiff was locked in the home with his daughter. Dickson attests that Plaintiff refused police requests to open



the door to allow them entry into the home, and actively and purposely blocked efforts by the police to enter the home. Dickson attests that Plaintiff's estranged wife, LiLing, who had possession of the home pursuant to a Family Court order, authorized the use of force to open a door to the home. Dickson attests that as a door was being kicked in by Officer Aleksiewicz, he [Dickson] was able to convince Plaintiff to open the door leading into the kitchen. Dickson attests that he then entered the home and noticed Plaintiff kept looking to an area on the counter that was obscured from his view, and that he then ordered Plaintiff to place his hands over his head and to not touch anything on the counter. Dickson attests that Plaintiff refused to follow orders, and instead attempted to grab an item from the obscured area of the counter. Dickson attests that he then subdued Plaintiff by placing him in an "arm bar", at which time it was determined that Plaintiff had been reaching for a cellular phone.

      Dickson further attests that he placed Plaintiff in a patrol car, turned the vehicle on, and attempted to determine whether Plaintiff should be charged with a crime. Dickson attests that once he determined no charges would be filed, he released Plaintiff from the patrol car. Dickson attests that Plaintiff was in the patrol car for approximately five to ten minutes, not for over an hour, as Plaintiff claims. Dickson further attests that his use of an arm bar to subdue Plaintiff and his placement of Plaintiff in a running patrol car for no greater than ten minutes were appropriate measures given the nature of the domestic dispute. See generally, Dickson Affidavit.

      The Defendant has also submitted an affidavit from Donald Chandler, who attests that he is a Sergeant with the Bluffton Police Department. Chandler, who was on the scene during the events set out in the Complaint, generally attests to the same set of facts as are attested to by Dickson in his affidavit. See generally, Chandler Affidavit. The Defendants have also submitted a copy of the Incident Report filed as a result of this incident, which includes summaries of interviews with the

4



Complainant/Victim (LiLing), a witness (the CODA employee), and the Plaintiff.  Supplemental reports are also attached, as is a copy of a statement from the Complainant/Victim.

In opposition to summary judgment, Plaintiff has submitted a "Declaration"[4] in which he attests that he was present at the marital home on the date in question because his wife had given him permission to be there.  Plaintiff attests that about 10:00 a.m. that morning, several police officers pounded on the door without stating any reason, and that because of the "loud knocking" he was scared and called his divorce lawyer.  Plaintiff attests that, afterwards, he opened the door and let the officers in, at which time the Defendant Dickson "rushed in and pushed me against the wall." Plaintiff further attests that Dickson "twisted my arm and put them in a locking position", and then knocked his cell phone to the floor and broke it.  Plaintiff attests that Dickson used profanity to curse at him and blamed him for not opening the door fast enough, and then cuffed his arms "tightly" behind his back and "dragged" Plaintiff to his patrol car.  Plaintiff attests that he told Dickson that he was sixty-two years old and was suffering arthritis pain, but that Dickson told him to "shut up".

Plaintiff attests that it was hot in the car and that when he asked Dickson to turn on the air-conditioner and to cuff his arms in the front, Dickson again told him to shut-up and said that if Plaintiff complained again "he would make it worse for me".  Plaintiff attests that "an hour later" Dickson pulled him out of his car, and he was placed in Officer Aleksiewicz's car with the air conditioner turned on.  Plaintiff attests that after about twenty minutes he was released and allowed to leave.

---

[4]Although this document has not been sworn to before a notary public, Plaintiff does state on the line above his signature "I declare under penalty of perjury that the foregoing is true and correct," which is sufficient.  Zainalian v. Memphis Bd. of Education, 3 Fed.Appx. 429, 431 (6th Cir. 2001); see also 28 U.S.C. § 1746.



Plaintiff attests that he then went to the Chelsea Medical Clinic and saw a doctor, who sent him to have an x-ray taken and prescribed medication for his pain. Plaintiff has attached a copy of the progress notes from this physician's visit to his declaration a Exhibit A. This exhibit indicates that Plaintiff presented complaining of pain in both shoulders, worse on the right. However, the objective examination notes do not reflect any abnormalities other that Plaintiff's complaints of pain, while the report of Plaintiff's x-ray reads: "AP views of the right shoulder with internal and external rotation fails to demonstrate any bone or soft tissue abnormality". Plaintiff was diagnosed with "normal right shoulder with no degenerative changes or soft tissue classification seen".

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after

6



careful review and consideration of the arguments and evidence presented, the undersigned finds and

concludes that the Defendant is entitled to summary judgment in this case.

        As a government employee, the Defendant Dickson is subject to suit under § 1983 for

damages in his individual capacity. <u>Gomez v Toledo</u>, 446 U.S. 635, 640 (1980); <u>Inmates v. Owens</u>,

561 F.2d 560 (4th Cir. 1977). However, even though subject to suit under § 1983, the Defendant

argues that he is entitled to summary judgment as no constitutional violation occurred and in any

event he is entitled to qualified immunity.[5]  The undersigned is constrained to agree.

---

[5]The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard
which the Court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from
> liability for civil damages insofar as their conduct does not violate clearly established
> statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

        The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a government official from liability for civil monetary
> damages if the officer's "conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457
> U.S. at 818. "In determining whether the specific right allegedly violated was 'clearly
> established,' the proper focus is not upon the right at its most general or abstract level
> but at the level of its application to the specific conduct being challenged." <u>Pritchett
> v. Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, "the manner in which this
> [clearly established] right applies to the actions of the official must also be apparent."
> <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir. 1992) . . . As such, if there is a
> "legitimate question" as to whether an official's conduct constitutes a constitutional
> violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993, 995 (4th Cir. 1994)(internal citations omitted), <u>cert</u>. <u>denied</u>, 516 U.S.
824 (1995).



Under the Fourth Amendment,[6] claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard.  Orem, 523 F.3d at 446; Smith v. Kendall, No. 09-6452, 2010 WL 764051 (4th Cir. Mar. 8, 2010).  This test requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Tennessee v. Garner, 471 U.S. 1, 8 (1985); White v. Town of Chapel Hill, 899 F.Supp. 1428, 1435 (M.D.N.C. 1995), aff'd, 70 F.3d 1264 (4th Cir. 1995); Sweatt v. State of Maryland, No. 89-3231, 1989 WL 126582 at **1 (4th Cir. 1989). What is objectively reasonable depends on what conditions exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving.  Graham v. Connor, 490 U.S. at 396; see Greenidge v. Ruffin, 927 F.2d 789 (4th Cir. 1991).

Here, considered in the light most favorable to the Plaintiff, the evidence reflects that the Defendant and other police officers responded to a child custody dispute call on the date in question, and that upon arrival on the scene found Plaintiff to be locked in the residence with a minor child.  See Court Docket Nos. 122-2, pp. 2, 6, 11.  Plaintiff himself concedes that he refused to open the door for the police officers, saying that he was "scared", requiring the police officers to receive permission from the wife to force open the door.  During this process Plaintiff finally opened the door

---

[6]"The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person."  Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997)(en banc), abrogated on other grounds, Wilkins v. Gaddy, 130 S.Ct. 1175 (2010)(citing Graham v. Conner, 490 U.S. 386, 388 (1989)).  Thereafter, the Fourteenth Amendment  due process clause protects a pre-trial detainee from the use of excessive force that amounts to punishment.  Graham, 490 U.S. at 395, n. 10.  In the case at bar, the Fourth Amendment applies to Plaintiff's excessive force claim since the events he alleges transpired incident to his being taken into custody.  Orem v.Rephann, 523 F.3d 442, 446 (4th Cir. 2008).



at which time, again considering the disputed facts in the light most favorable to the Plaintiff, the Defendant pushed Plaintiff against the wall and secured Plaintiff's arms behind his back. Plaintiff's arms were then handcuffed behind his back, and he was placed in the Defendant's patrol car. Although the Defendant's evidence (including affidavits from the Defendant and another officer, as well as statements from additional personnel as set forth in the Incident Report) put Plaintiff in the patrol car for no more than ten minutes, and that the patrol car was turned on, Plaintiff states in his declaration that he was in the Defendant's patrol car for an hour without air conditioning. Therefore, the undersigned has considered Plaintiff's version of what happened to be true for purposes of summary judgment. But see Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].

This evidence is not sufficient to give rise to a genuine issue of fact as to whether excessive force was used against the Plaintiff. When considering a police officer's actions under the "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the purported crime being committed, whether the subject posed an immediate threat to the safety of the police officers or others, and whether the subject was actively resisting arrest or attempting to evade arrest. Graham, 490 U.S. at 396; see Foote v. Dunagan, 33 F.3d 445, 447-448 (4th Cir. 1994)[drawing of weapon, grabbing of car keys, and pulling driver out of car reasonable actions in investigative stop]; Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988).

9



The evidence shows that police officers were called to the residence for a domestic dispute, a situation which is often times tense, unpredictable, and occasionally even dangerous.  Further, upon arrival, Plaintiff was found to be locked inside the home with a minor child, and it is undisputed that Plaintiff initially refused to open the door, causing the police officers to attempt to force it open. There was no way for these police officers to know what situation they would confront once they gained access to the house, and the fact that the Defendant may have perceived a need to secure Plaintiff against a wall and place Plaintiff in handcuffs under these circumstances is in no way objectively unreasonable.  See Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; cf. Bell v. Wolfish, 441 U.S. 520, 540 (1979) ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action"]

There is also no indication in the evidence presented (including Plaintiff's evidence) that any *excessive* amount of force was used, or that Plaintiff suffered any injuries whatsoever. Indeed, Plaintiff's own medical exhibit confirms that he suffered no injuries as a result of this incident.  Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental injury is inadequate to survive a motion for summary judgment].  Although it is not required that Plaintiff show he suffered more than a de minimis injury to maintain his excessive force claim; see Wilkins, 130 S.Ct. at 1179-1180 [Noting that the notion  that significant injury is a threshold requirement for stating an excessive force claim was rejected in Hudson v. McMillian, 503 U.S. 1, 7 (1992)]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry.  Wilkins, 130 S.Ct. at 1179-1180 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who

10



complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid

excessive force claim"], citing to <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Johnson</u>, 481 F.2d at 1033); <u>see also</u>

<u>Ellerbe v. Roach</u>, No. 08-3118, 2010 WL 3361703, at * 3 (E.D.N.C. Aug 24, 2010).  Plaintiff has

failed to produce any evidence showing a discernible injury in this case.

   Therefore, while Plaintiff may conceivably have a state law claim arising from this

incident, the evidence before this Court is not sufficient to create a genuine issue of fact as to whether

constitutionally excessive force was used under the circumstances in this case.  <u>See</u> <u>Paul v. Davis</u>,

424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort

law is sufficient to set forth a claim for a violation of a constitutional right]; <u>DeShaney v. Winnebago</u>

<u>County Dep't of Social Servs.</u>, 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for

violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976)

[§ 1983 claim does not lie for violation of state law duty of care].  Plaintiff's excessive force claim

asserted as a constitutional violation should therefore be dismissed.

### Conclusion

   Based on the foregoing, it is recommended that the Defendant's motion for summary

judgment **granted,** and that this case be **dismissed**.

   The parties are referred to the Notice Page attached hereto.



_____

Bristow Marchant
United States Magistrate Judge

February 4, 2011
Charleston, South Carolina

11

**Notice of Right to File Objections to Report and Recommendation**


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

